**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

In re

**STEPHEN ROY JONES, and**
**PATRICIA LOUISE JONES**,

Debtors.

Case No. **05-65285-7**

# MEMORANDUM OF DECISION

At Butte in said District this 10th day of April, 2008.

In this Chapter 7 case, after due notice hearing was held at Missoula on January 10, 2008, on the Debtors' Motion for Sanctions for Contempt of Court" ("Motion") against Northwest Collectors, Inc. ("Northwest Collectors") and its attorney Patrick G. Sandefur/the Law Office of Patrick G. Sandefur ("Sandefur"), of Missoula, Montana, and Mountain West Co-op ("Cenex") (Docket No. 15), filed November 28, 2007, for violation of the discharge injunction of 11 U.S.C. § 524(a)(2). Northwest Collectors, Sandefur and Cenex filed an objection and were represented at the hearing by counsel. The Debtors appeared represented by counsel in support of the Motion. The parties offered witness testimony, and exhibits were admitted. At the conclusion of the hearing the Court directed Debtors' counsel to file an affidavit of fees and costs, and granted Northwest Collectors and Sandefur 10 days to respond and request a hearing. The parties filed briefs and agreed to waive further hearing on the amount of attorney fees and costs by Stipulation filed on February 28, 2008, which the Court approved and took the matter under advisement. This matter is ready for decision. For the reasons set forth below, Debtors' Motion will be

1

granted with respect to Northwest Collectors and Sandefur for violations of the discharge injunction, but the Motion is denied with respect to Cenex. A separate Order and Judgment against Northwest Collectors and Sandefur shall be entered accordingly.

This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a). Debtors' Motion for Sanctions for violation of the discharge injunction of 11 U.S.C. § 524(b) is a core proceeding under 28 U.S.C. § 157(b)(2), because it "depends on the bankruptcy court's authority to enforce its own orders under the Bankruptcy Code." *Dunmore v. United States*, 358 F.3d 1107, 1114, 1115 (9th Cir. 2004); 11 U.S.C. § 105(a).

Northwest Collectors, Sandefur and Cenex together filed the objection to Debtors' Motion and were represented at the hearing by attorney Edward A. Murphy ("Murphy") of Missoula, Montana. Debtors were represented by attorney Daniel S. Morgan ("Morgan") of Missoula. Debtor Stephen R. Jones ("Stephen") testified, as did Northwest Collectors' owner and president Kelly Paulson ("Paulson") and attorney Patrick G. Sandefur of Missoula, Montana. Debtors' Exhibits ("Ex.") 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and Northwest Collectors' and Sandefur's Ex. A, B, C[1], D, E and F, all were admitted into evidence without objection. The Court granted Debtors' request to take judicial notice of the Discharge of Joint Debtors entered on February 13, 2006 (Docket No. 10). At the conclusion of the parties' cases-in-chief the Court found that Cenex did not violate the discharge injunction. The Court granted Morgan 10 days to file an affidavit of fees and costs incurred in bringing Debtors' Motion, and granted Northwest Collectors and Sandefur 10 days thereafter to file a response and request a hearing on the reasonableness of the fees and costs, after which the Court would deem Debtors'

---

[1]Ex. C was replaced by Debtors' Ex. 15.

Motion for Sanctions against Northwest Collectors and Sandefur fully submitted and take it under advisement.

Morgan filed his affidavit of fees and costs on January 22, 2008 (Docket No. 24), including billing invoices setting forth attorney fees in the amount of $5,510.00 and costs of $288.46 for reopening the case, postage and copies. Northwest Collectors and Sandefur filed an objection to all fees in excess of $1,010.00 requested by Morgan, including fees related to damages under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and set a hearing on the objection for March 6, 2008. Morgan filed a response brief on the issue of attorney fees on February 11, 2008, and Northwest Collectors and Sandefur filed a reply brief on February 25, 2008. On February 28, 2008, the parties filed a "Stipulation to Waive Hearing" signed by Morgan and Murphy on behalf of their clients, agreeing that "there are no factual issues requiring a hearing, and that therefore the matter should be submitted on the briefs". The Court approved that Stipulation and vacated the hearing, taking Debtors' Motion under advisement.

## FACTS

Stephen and his spouse and co-Debtor Patricia Louise Jones with Stephen's father Roy Jones ("Roy") at the same address, 684 Upper Lynch Creek Road in Plains, Montana. Roy, who is over 84 years old, entered into an application for credit from Cenex in Missoula dated 6-12-97. Ex. A. Stephen testified that he did not fill out or sign Ex. A for Roy, but that Stephen used Roy's Cenex account to charge for fuel for logging operations. Stephen testified that he and Roy used the fuel for their logging business, and that Roy operated a skidder "a little" during 1997 despite his age. Stephen testified that he had Roy's permission to charge fuel on the Cenex

3

account and never bought fuel without Roy's permission, and that Roy also purchased fuel on the account. Paulson and Stephen both testified that all the charges on Roy's Cenex account were incurred before 2005.

Roy's Cenex account became delinquent, and Cenex turned it over to Northwest Collectors in September 2003 (the "Cenex account"). Northwest Collectors is a collections agency owned by Paulson, who is its president. Paulson testified that she has had experience in debt collections since 1999, that she has taken classes in federal collections law, including bankruptcy law, and that Northwest Collectors' employees are trained in bankruptcy law by means of online courses.

Stephen also had an account with Les Schwab for tires. That account became delinquent and was turned over for collection to Northwest Collectors, file #16856, in Stephen's name. Ex. D (the "Les Schwab account").

Ex. 15 is the telephone log of Northwest Collectors' communications and collection efforts on Roy's Cenex account. Stephen testified that Northwest Collectors contacted Roy before it contacted him. Northwest Collectors sent Roy a "precollect letter" on September 11, 2003. Ex. 15, p. 14. The letter demanded Roy pay within ten days or fees would be added.

Ex. 15[2] has telephone log entries for Roy's Cenex account beginning 9/22/2003 on page 14, and the most recent entry on page 1 dated 1/9/2008. The log entries include the date, time of the entry, initials of the Northwest Collectors' employee ("collector") involved in the calls and his or her description of the calls using abbreviations which each collector devises for himself or herself. Paulson testified that all conversations with a debtor should appear on the phone log

---

[2]The parties agreed that Ex. 15 would replace Ex. C.

4

except if the employees are not doing what they should be.

Northwest Collectors began calling Roy on 9/22/03. After several calls with no answer or messages left, they reached Roy who told them that Stephen had used Roy's Cenex credit application without Roy's permission, and that Stephen lives on Roy's property. Ex. 15, pp. 12, 13. On 9/22/03 Roy told them Stephen's telephone number, and Northwest Collectors reached Stephen, who according to the log offered to pay $200.00 twice a month on the Cenex account. Ex. 15, p. 14.

Paulson testified that Northwest Collectors phoned both Roy and Stephen, but that Stephen called them about the Cenex account many more times than they called him. She testified that Northwest Collectors did not add Stephen's name to Roy's Cenex account, other than in the phone log, because it leaves the account listed in the name under which it is turned over for collection, and the whole time the debtor for the Cenex debt was Roy even though Stephen told them the Cenex charges were for his logging business.

Stephen testified that Northwest Collectors contacted him many times, and he admitted charging for the Cenex fuel. He testified that he thought Roy was responsible for the Cenex charges and he was concerned that Northwest Collectors would pursue collection against Roy, so he offered in early 2007 to pay the Cenex charges. Paulson testified that Stephen called from the forest on a cell phone after a call to Roy on 10/24/03, in which Stephen told Northwest Collectors he "can pay some Monday". Ex. 15, p. 13.

On 8/18/04 Northwest Collectors reached Stephen again, and the log indicates that he stated he knew he owed the debt but could pay only $250.00 per month beginning 8/27/04. Ex. 15, p. 11. Stephen called Northwest Collectors from the woods where he was working on

5

9/14/04 and left a message that he would send a payment on 9/27/04. Ex. 15, p. 11. Paulson testified that she understood Stephen was liable for the Cenex debt, even though his name was not added to the account on their system.

Debtors filed a voluntary Chapter 7 petition on October 15, 2005, with their Schedules and Statement of Financial Affairs. Stephen testified that Northwest Collectors was one of the reasons that he filed for bankruptcy relief, and that he listed Roy's Cenex debt on his schedules. Schedule F, Ex. 1, lists unsecured nonpriority claims, including Northwest Collectors in the amount of $6,083.00 for a debt incurred in 2003 described as "Collections for Cenex Fuel Bill". The address for Northwest Collectors given was "PO Box 2898 Missoula, MT 59806". Another claim was listed for Stephen on Schedule F owed to Northwest Collectors in the amount of $5,883.00 described as "Collections for Les Schwab". No codebtors are listed on Schedule H.

The Notice of commencement of this case and meeting of creditors, Ex. 3, was mailed to creditors including Northwest Collectors by first class mail on November 4, 2005. Paulson testified that Northwest Collectors received the Notice on or about November 8, 2005. The Notice includes a provision on page one headed: "Creditors May Not Take Certain Actions" and provides in part: "If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case." Ex. 3 further explains on page 2, ""Creditors Generally May Not Take Certain Actions":

> Prohibited collection actions are listed in Bankruptcy Code § 362. Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages.

Ex. 3, page 2, also includes a section entitled "Discharge of Debts" which provides in pertinent

part:  "A discharge means that you may never try to collect the debt from the debtor."

Paulson testified that she received Ex. 3 on or about November 8, 2005, and that they

searched Northwest Collectors' system for Stephen's name and found only the Les Schwab

account in Stephen's name, but they did not find the Cenex account.  Northwest Collectors

closed the Les Schwab account which was in Stephen's name and put it in the dead file.  Paulson

testified that Northwest Collectors did not find the Cenex account in their search because it was

in Roy's name, and they did not open an account for Stephen for the Cenex debt, even though

Stephen's name appears on the phone log for Roy's Cenex account (Ex. 15), because that

account was listed in Roy's name only.  Consequently, Northwest Collectors did not update

Roy's Cenex account to note Stephen's bankruptcy.  Under questioning by the Court, Paulson

testified that Northwest Collectors did not put the Cenex account in Stephen's name because then

the account would not show Roy's name.

Northwest Collectors continued to call Roy on the Cenex account.  On 10/25/2005, Ex.

15 notes that Roy owes the debt and Roy again gave the collector Stephen's name.  Ex. 15, p. 8.

Paulson testified that Northwest Collectors kept calling Roy, but that she did not believe they

called Stephen on the Cenex account although Stephen called them.  Stephen testified that

Northwest Collectors did call him after his bankruptcy petition date, and that one of its collectors

told him that he could not list Roy's Cenex debt on his bankruptcy[3].

Stephen called Northwest Collectors about the Cenex account on 12/9/2005, and told the

collector that he wanted to clear up the debt but was not working and had no money.  Ex. 15, p.

---

[3]The Cenex debt was already listed on Schedule F.  Ex. 1.

8.  Ex. 15 relates that Stephen called Northwest Collectors again on 1/31/2006.  The memo for 1/31/2006 states that Stephen was not working, was waiting for his bankruptcy discharge in one month, and that he will start payment as soon as he is back to work.  Ex. 15, pp. 7-8.

No adversary proceeding was filed objecting to Debtors' discharge or seeking exception from their discharge, by any party.  No adversary proceeding has been filed to revoke Stephen's discharge.  No reaffirmation agreement covering the Cenex debt was submitted or approved by the Court, as required under 11 U.S.C. § 524(c).

A "Discharge of Joint Debtors" was entered on February 13, 2006, and mailed to creditors including Northwest Collectors.  Ex. 4.  On page 2 of the Discharge are the following sections:

**Collection of Discharged Debts**

The discharge prohibits any attempt to collect from the debtors a debt that has been discharged.  For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtors. A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

\* \* \* \*

[A] debtor may voluntarily pay any debt that has been discharged.

**Debts that are Discharged**

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt that is discharged.  Most, but not all, types of debts are discharged if the debt existed on the date the bankruptcy case was filed. \* \* \* \*

**Debts that are Not Discharged.**

\* \* \* \*

8

g.  Some debts which were not properly filed by the debtor;
h.  Debts that the bankruptcy court specifically has decided or will decide in this
bankruptcy case are not discharged;
i.  Debts for which the debtor has given up the discharge protections by signing a
reaffirmation agreement in compliance with the Bankruptcy Code requirements
for reaffirmation of debts.

Stephen testified that he believed the discharge would protect him, but that it did not

because Northwest Collectors continued to contact him seeking payment of the Cenex account

after the discharge.  Northwest Collectors kept calling Roy about the Cenex account.  Ex. 15

shows Northwest Collectors called the bankruptcy hotline on 3/10/2006 and verified that Stephen

received a discharge on 2/13/06.  Ex. 15, p. 7.  The entry for 3/10/2006 also states that they called

the debtor, who said that the roads to his logs are closed right now and should be opened in about

a month, and he will call back.  Ex. 15, p. 7.  Paulson testified that the debtor referred to in the

3/10/2006 entry is Roy because the account was in his name, but she admitted that she was just

guessing that the call was to Roy and that he was 87 years old at the time.

The Trustee filed a no asset report on April 19, 2006.  A Final Decree was entered on

April 20, 2006, closing the case.

Paulson testified that Northwest Collectors' calls in May through August 2006 were to

the phone number 406 826-3580, and she did not know whether that is Stephen's number.  Ex.

15, p. 7.  Several calls on Ex. 15 dated 8/5/2006 on Ex. 15, pp. 6-7, includes notes to Paulson.

She testified that the notes from the collector, named Victor, on 8/5/2006 allege fraud in relation

to Stephen's bankruptcy, which is specifically noted on Ex. 15, p. 6, and identify the debtor on

the account as Stephen.  By then, however, the deadline to file dischargeability complaints had

expired and the discharge had been entered.  Stephen testified that no one ever told him that the

Cenex debt was incurred by fraud.

Paulson testified that she spoke with Victor about the Cenex account, then consulted with her attorney Reep about whether Stephen could be liable for Roy's Cenex account[4]. She testified that she did not tell Reep about Stephen's discharge, even though she consulted with Reep regarding bankruptcy matters, and that Reep gave her a legal opinion that Stephen could be liable for the Cenex debt. But she did not open another account for the Cenex debt in Stephen's name because he told them he wanted to pay the debt.

Paulson testified that she felt the Cenex debt was reaffirmed by Stephen, although she admitted that no reaffirmation agreement was ever signed by Stephen for the Cenex debt, and no reaffirmation agreement was submitted or approved prior to entry of Debtors' discharge in this case.

According to the phone log, Ex. 15, in October and November of 2006, Victor continued to call Roy about the Cenex debt. He left phone messages, and Stephen kept calling Northwest Collectors offering to pay the Cenex debt. Ex. 15, p. 5 sets forth those calls, in which Stephen is referred to as "D" or debtor for the account. Ex. 15, p. 4, includes phone log notes dated 11/27/2006, indicating that Stephen offered to settle in full ("SIF") for $3,800[5]. Paulson testified that Stephen made a verbal agreement to settle the Cenex debt for $3,800, payable at $300 per month. She later admitted that Stephen's verbal offers to pay did not constitute an agreement, and that Northwest Collectors did not send anything in writing to Stephen. She testified that Stephen made a couple of payments and then stopped.

---

[4]That conversation is not noted on Ex. 15.

[5]Stephen explained that $3,800.00 was the cost of fuel for a logging truck for one month.

10

Paulson testified that Stephen offered to pay the Cenex if Northwest Collectors would leave Roy alone. Stephen denied that he agreed to pay Northwest Collectors to leave Roy alone. He testified that he does not deny making the Cenex charges and offering to repay the debt, and he admitted that if Northwest Collectors had never called him he would not have paid.

In February 2007, Paulson assigned a collector to determine whether Roy had filed a bankruptcy case, and discovered that Roy filed a bankruptcy in September 1995. Ex. 15, p. 3. Paulson testified that the fact that Stephen and Roy's names and social security numbers were similar caused Northwest Collectors problems in their system.

Despite receiving notice of Stephen's bankruptcy case, and having received notice and knowledge of Stephens' discharge, Northwest Collectors filed suit against Stephen in justice court to collect the Cenex debt. Paulson testified that Northwest Collectors filed suit based on Stephen's promise to pay, but later testified that they sued Stephen on the account, not on his promise. Ex. 15, p. 3 includes log notes indicating that they were initiating suit in JP court for $7,000. Paulson testified that Northwest Collectors initiated a lawsuit against Stephen, then dismissed it, and later filed suit against Roy.[6]

Ex. 5 is the complaint which Sandefur filed on behalf of Northwest Collectors against Stephen, dated March 21, 2007, Cause No. CV-2007-001085-7-CA (the "justice court lawsuit"). Sandefur testified that the justice court lawsuit was filed against Stephen instead of Roy because of other documents he reviewed, but he testified that he has not seen or reviewed the phone logs for Roy's Cenex bill, Ex. 15, and that he does not think that review of the phone logs were part

---

[6] The Court takes no position on the merits of any lawsuit against Roy by Northwest Collectors for any debt owed to Cenex.

11

of his required due diligence to begin the lawsuit.  Ex. 5 requests judgment against Stephen in the total amount of $7,000.00, including the Cenex debt and $3,253.38 in interest and collection fees.  Paulson and Sandefur both testified that they prayed for judgment for $7,000 because Stephen did not pay the Cenex debt like he promised.

On April 5, 2007, the phone log shows a call from Stephen to Northwest Collectors.  Ex. 15, p.2, indicates that Stephen told Northwest Collectors that the Cenex debt showed up on his credit report and he stated that the claim is not his but belongs to his dad.  Paulson testified that such credit reporting "happens all the time" when the names and addresses of debtors are similar.  Stephen testified that he received the justice court complaint, and that he talked to Sandefur on the phone and told him he never had a Cenex account.  Sandefur told Stephen to file a response.

Stephen signed a facsimile dated 6/27/07, Ex. 6, which he testified his spouse wrote, stating he has never had an account or completed an application for Cenex credit.  Stephen testified that he thinks Ex. 6 was sent to Sandefur.  Sandefur testified that Stephen called him and told him that he had used the Cenex card in his logging business, but that Stephen did not say anything about bankruptcy.  Sandefur told Stephen to call Northwest Collectors.

On August 6, 2007, three phone calls between Paulson and the phone number 406 544-6653 were made, as shown by Ex. B.  Stephen testified that he called Paulson twice in August, after receiving a legal letter and the justice court complaint.  He testified that when he reached Kelly she told him he had to pay the Cenex bill or she would garnish his wages.  Paulson testified that Stephen called her and said that the Cenex bill "might be" part of his bankruptcy, and that she told Stephen to get an attorney.

Sandefur is an attorney in Missoula, Montana.  He testified that he practices family law

12

and has handled most of Northwest Collectors' collections cases since early 2007. He testified that he is not a bankruptcy attorney, but that he took a class in bankruptcy in law school and has taken one bankruptcy continuing legal education ("CLE") course since graduating.

Sandefur testified that he knows Debtors' attorney Morgan, and considered him to have sufficient expertise in bankruptcy law that Sandefur has referred friends and family members to Morgan for bankruptcy matters.

Sandefur testified that Morgan telephoned him about the justice court complaint against Stephen on August 8, 2007, and that although Sandefur took notes he was distracted because he was late picking up his children and did not have a file. Sandfur testified that he told Morgan, as he tells everyone, that he would look into it. Sandefur testified that Morgan told him he was not representing Stephen yet, and Sandefur "wanted to see something in writing" to take to his client. On August 8, 2007, Sandefur emailed Paulson informing her that Morgan had called him and said that the Cenex debt was covered by Stephen's bankruptcy. Ex. 8. Sandefur testified that he asked Paulson for more information, but he did not know how Paulson wanted to handle it and Morgan did not send him anything in writing as he requested.

Paulson testified that when she received Sandefur's email she knew the justice court lawsuit against Stephen could not go forward for the Cenex debt, that it was the first she learned about the bankruptcy issue for the Cenex debt, and that Northwest Collectors ceased collection efforts after August 6, 2007. She called Morgan and said that she would dismiss the case, but she admitted that she did not call Morgan until September 5, 2007, which she agreed was too late as a default judgment had been entered by then against Stephen before they dismissed the justice court case.

13

Paulson testified that on August 10, 2007, after Morgan had telephoned Sandefur and Sandefur had emailed Paulson Ex. 8, Northwest Collectors sent to the justice court for filing a motion for default judgment.  Ex. 9 is the motion and brief for default judgment dated August 13, 2007, signed by Sandefur on behalf of Northwest Collectors.  Paulson testified that she thought Sandefur "was handling it."  Sandefur did not dispute that Paulson sent him Ex. 9.

When asked what investigation he undertook before signing Ex. 9, Sandefur testified that he had requested documents from Morgan which he did not receive, and that Stephen had told him that he was responsible for the Cenex debt.  Ex. 9 asks for total judgment in the amount of $7,035.00, but did not include any amount for attorney fees even though Sandefur attached an affidavit of his fee as part of his practice[7].

Sandefur testified that he did not dismiss the justice court case against Stephen after Morgan's phone call and letter because he did not receive anything in writing from Morgan as he requested.  Sandefur testified that when a lawsuit is filed in justice court, the defendant has to respond, appear and defend, and that "I need more than a phone call."  Sandefur denied receiving a voicemail or telephone call from Morgan on August 15, 2007, and testified that Morgan did not call him, send him anything in writing or make an appearance in justice court.

Ex. 10 is an email and letter from Morgan to Sandefur.  The letter is dated August 22[8], 2007, and complains about the motion for entry of default judgment after Morgan's earlier

---

[7]Sandefur testified that he includes attorney fees because he handles a volume of cases, but that the justice court ignored his affidavit when it entered judgment against Stephen.  He billed Northwest Collectors $250 for the justice court lawsuit.

[8]The email portion of Ex. 10 is dated August 23, 2007, which is when Sandefur testified he received it.

14

contact and Sandefur's agreement to investigate.  Ex. 10 alleges violations by Northwest

Collectors of the discharge, the FDCPA and FCRA.  Ex. 10 also included a copy of Stephen's

Schedule F listing the Cenex fuel bill collections debt, and warns that Morgan will reopen the

case and seek sanctions.  Sandefur testified that he believes Stephen's default had been taken in

the justice court lawsuit by the time he received Ex. 10 from Morgan.  He testified that Stephen

was defaulted because he had not filed an answer and Morgan "had taken no action."  Sandefur

confirmed that he saw the attached Schedule F, but called Morgan's statements "allegations."

On August 30, 2007, the justice court entered judgment against Stephen in favor of

Northwest Collectors in the amount of $7,035.00.  Ex. 11.  Sandefur testified that prior to entry

of the judgment he probably forwarded Morgan's email to Paulson and wanted to know the

background of the case and whether the Cenex debt was listed in Stephen's bankruptcy.  But

Sandefur did not contact the justice court before the judgment was entered after he sent in Ex. 8,

the motion for judgment.

Paulson testified that she thought Morgan and Sandefur were working it out and they had

been talking for three weeks, that she talked to Sandefur, and that he was waiting for documents.

Sandefur testified that nothing he did was harmful, and that he did not think that the default

judgment entered against Stephen was harmful.  Paulson testified that when she called Morgan

on September 5, 2007, she told him that Roy's Cenex account was not on Stephen's bankruptcy

case, notwithstanding Ex. 10 which Morgan had sent Sandefur with Stephen's Schedule F two

weeks earlier, and which Paulson testified she received by September 5, 2007.

Sandefur filed a motion to dismiss the justice court lawsuit "without prejudice" on

September 5, 2007.  Ex. 12/ E.  Paulson testified that Northwest Collectors prepared the motion

15

to dismiss and sent it to Sandefur to sign.  The justice court dismissed the case on September 13, 2007.  Ex. 12.  Sandefur testified that the judgment had been entered before the motion to dismiss had been received by the justice of the peace from the clerk of court.  He explained that Paulson decided to dismiss the justice court lawsuit against Stephen because it had become "too much of a hassle."[9]  Paulson testified that it was a hassle because of Morgan's letter, that Sandefur was not a bankruptcy lawyer and her bankruptcy attorney told her Stephen was still liable[10].

On October 2, 2007, Morgan sent Sandefur a letter complaining of the entry of judgment in justice court and informing Sandefur that he was jointly and severally liable for violation of the discharge injunction, the FDCPA and FCRA, and that Morgan intended to seek sanctions unless Sandefur and Northwest Collectors notify the justice court, vacate the judgment, provide a letter to credit reporting agencies of the errors, and pay Jones $2,500.00[11] by October 9, 2007. Ex. 13.

On October 3, 2007, Morgan emailed Sandefur about receiving the motion to dismiss and the order dismissing the case, and stated that he trusts the judgment also would be set aside by his deadline.  Later on October 3 Sandefur responded, complaining about "such outrageous and personal threats and allegations from you, without even a phone call," but agreeing to take further

---

[9]After the justice court lawsuit against Stephen was dismissed, however, Paulson testified that Northwest Collectors filed suit against Roy.

[10]Paulson did not identify her "bankruptcy lawyer's" name, but earlier she testified that when she consulted with her attorney regarding bankruptcy matters, Reep, she did not tell Reep that Stephen had received a bankruptcy discharge.

[11]The $2,500.00 consisted of $1,000 FDCPA damages, $1,000 FCRA damages and $500.00 in attorney's fees.

actions with the justice court.  Ex. 13.  Sandefur followed that email shortly thereafter with another stating:  "Your demand for money is rejected."

The following day Sandefur sent Morgan a letter dated October 4, 2007, stating that there was nothing sinister or malicious in obtaining the Judgment.  Sandefur wrote in Ex. 13:  "My client has never received a notice to creditors or any other notice from the bankruptcy court.  You have provided no documentation that this debt was listed or discharged by any alleged bankruptcy."  Both of those statements are false and refuted by Stephen's Schedule F, by the notice of commencement of the case, by the discharge entered in this case, and by Northwest Collectors' phone logs, Ex. 15, pages 3, 4, 6, 7, and 8 where Stephen's bankruptcy and discharge are noted and which show that Northwest Collectors had both notice and actual knowledge of Stephen's bankruptcy filing, the listing of the Cenex debt on Schedule F, and the discharge.  Sandefur accused Morgan of not representing his client in justice court, and suggests that Morgan "have a discussion with your malpractice insurance carrier."  Sandefur claimed that his client took no action to collect the judgment and never reported the judgment to credit agencies, and closes: "We will not entertain any further settlement demands.  I will be taking no further action in this matter and I will be closing my file."  Ex. 13.

Sandefur admitted that he was very angry.  He drafted the motion, Ex. E, and order vacating the judgment ab initio, which the justice of the peace signed on October 4, 2007[12].  Ex. 14/F.  When asked about Ex. 13, Sandefur testified that he was confused by what was discharged, that he did not know what was in Northwest Collections file and never asks to review

---

[12]When asked about the delay in vacating the judgment Paulson testified that Sandefur took care of that, and she was on a trip to New York City.

17

Northwest Collections' phone logs. Sandefur insisted that, notwithstanding the Schedule F sent to him with Ex. 10, nothing Morgan sent him relates to the Cenex debt and that Morgan did not send him anything.

On October 11, 2007, Morgan filed Debtors' motion to reopen the case. Debtors filed their Motion for Sanctions for Contempt of Court on November 28, 2007, requesting that Northwest Collectors, Cenex[13] and Sandefur be held in contempt of court for violations of the discharge injunction, and for joint and several imposition of compensatory and remedial sanctions[14].

Northwest Collectors, Cenex and Sandefur filed an objection, contending that the claim against Roy was valid and Debtors did not list Roy as a co-debtor on Schedule H. They argued in their response that their agreement with Stephen to pay was an enforceable post-petition obligation.

Stephen testified that he was turned down for credit when he applied for a car loan. He testified that he checked his credit report, and the report listed Northwest Collectors for the Cenex debt after the discharge, based upon which he claims Northwest Collectors' judgment hurt his credit. Stephen testified that he had to miss work at Kelly Logging in Butte, where he had been working full time and overtime the week of trial, in order to attend the hearing on his motion for sanctions. He testified that he lost $326 in wages for missing work and overtime, and

---

[13]The Court denied the Motion with respect to Cenex at trial, finding no testimony or other evidence that Cenex violated the discharge injunction.

[14]The Motion does not request punitive damages. Morgan's response brief (Docket No. 27) suggests on the last page that the Court consider punitive damages, but since no punitive damages were requested in Debtors' Motion they are not properly before the Court and will not be considered.

that he had to travel 127 miles each way, for a total of 324 miles, in order to attend the hearing on Debtors' Motion. No evidence was offered to the contrary. The Court allows mileage at the standard Internal Revenue Service rate of $.485 per mile or $123.19, and finds that Debtors suffered total actual damages in the amount of $449.19 to attend the hearing.

Morgan filed his affidavit for attorney fees (Docket No. 24), including two invoices setting forth fees and costs. Morgan's invoices show fees for services beginning 8/7/2007 through 1/22/2008, totaling $5,510.00 in fees at the billing rate of $200.00 per hour. Morgan's affidavit states that his fees do not include over 10 hours incurred by his partner Andrew Pierce for work on the case. The costs consisted of the reopening fee of $260.00 and $28.46 for postage and copies to serve the Motion for Sanctions, a total of $288.46. Billing entries on the invoices dated 8/17/2007 (1 hour and $200); 8/21/2007, (1 hour and $200); and 10/24/2007 (2.75 hours and $550.00) all include portions of fees related to FDCPA and FCRA violations, which are not core proceedings.

## DISCUSSION

### A. Contentions of the parties.

Debtors argue that Northwest Collectors and Sandefur violated the discharge injunction and should be held in contempt. They contend that Northwest Collectors and Sandefur each should be held to a higher standard, Northwest Collectors because it is a commercial collection agency and Sandefur because he is an attorney, because of their actions to collect the Cenex debt after the discharge and numerous warnings from Morgan.

Northwest Collectors and Sandefur argue that Stephen called Northwest Collectors and offered to pay for the Cenex bill because he purchased the fuel, and that Northwest Collectors

19

agreed to accept payments from Stephen and in consideration ceased collection against Roy.

Northwest Collectors "asserts that its agreement with Stephen Jones to forbear collection from

Roy Jones in exchange for a promise from Stephen Jones to pay on the debt and that agreement is

a valid, enforceable post–petition obligation of Stephen Jones."  Sandefur contends that he was

unaware that the Cenex debt had any relationship to Stephen's bankruptcy.

### B.  Discharge – § 524(a)(2).

A discharge under 11 U.S.C. § 524(a)(2) "operates as an injunction against the

commencement or continuation of an action, the employment of process, or an act, to collect,

recover or offset any such debt as a personal liability of the debtor . . . ."  *In re Ellett*, 254 F.3d

1135, 1148 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 122 S.Ct. 1064, 151 L.Ed.2d 968 (2002).

Section 524 implements the concept of discharge by enjoining a party seeking to collect a debt as

a personal liability of the debtor.  *Lone Star Security & Video, Inc. v. Gurrola*, 328 B.R. 158 (9th

Cir. BAP 2005).

The United States Supreme Court has written that a bankruptcy discharge "extinguishes"

an action against the debtor *in personam* as a means of enforcing a claim.  *Johnson v. Home State

Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66, 84 (1991); *In re Crocker*, 20

Mont. B.R. 371, 390 (Bankr. D. Mont. 2003).  Thus, Northwest Collectors' argument that it had

an enforceable verbal agreement against Stephen based on his promise to pay to protect his father

Roy from Collection is without merit, because any state law remedy based on an action against

Stephen *in personam* was extinguished under *Johnson* and enjoined by § 524(a)(2).

The Court need not determine whether the numerous telephone calls shown by Ex. 15

violated the discharge injunction, because when Sandefur initiated the justice court complaint

20

against Stephen on behalf of Northwest Collectors to collect the discharged prepetition Cenex

debt, filed a motion for default judgment and obtained the default judgment, they each clearly

violated the discharge injunction of § 524(a)(2).

Violation of the discharge injunction with notice of the discharge injunction is subject to

a contempt remedy under 11 U.S.C. § 105(a).  *Gurrola*, 238 B.R. at 171; *Knupfer v. Lindblade*

*(In re Dyer)*, 322 F.3d 1178, 1191-92 (9th Cir. 2003); *Walls v. Wells Fargo Bank,* N.A., 276 F.3d

502, 507 (9th Cir. 2002); *Crocker*, 20 Mont. B.R. at 387; *In re Gomez*, 17 Mont. B.R. 166, 170

(Bankr. D. Mont. 1998), citing 4 *Collier on Bankruptcy*, ¶ 524.02[2][c], at 524-18 (15th ed.

1998).  This Court addressed violation of the discharge injunction in *In re Gomez*, 17 Mont. B.R.

at 171-72 (quoting *In re Killorn*, 16 Mont. B.R. 364, 366-68 (Bankr. Mont. 1998)):

> Contempt proceedings are governed by F.R.B.P. 9020.  Prior to Congress reform
> of Rule 9020 in 1987, bankruptcy courts did not have the inherent power of
> contempt in the Ninth Circuit.  *In re Sequoia Auto Brokers, Ltd. (Plastiras v.
> Idell)*, 827 F.2d 1281, 1284 (9th Cir. 1987).  Subsequent to *Sequoia*, the United
> States Supreme Court held that courts created by Congress have inherent powers,
> unless Congress intentionally restricts those powers.  *Chambers v. NASCO, Inc.*,
> 501 U.S. 32, 47, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991).  The Ninth Circuit
> later held that with Congress enacting Rule 9020 and § 105(a), *Chambers*
> supersedes *Sequoia* and bankruptcy courts have the inherent power to sanction for
> contempt.  *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284-5 (9th Cir. 1996).
>
> Rule 9020(b) provides that contempt "committed in a case or proceeding pending
> before a bankruptcy judge . . . may be determined only after a hearing on notice"
>
> * * * *
>
> Both the Discharge and § 524(a)(2) provide that the Discharge operates as an
> injunction, enjoining all creditors from commencing, instituting, or continuing any
> action or engaging in any act to collect discharged debts.  *See, In re Raiman*, 172
> B.R. 933, 936 (9th Cir. BAP 1994). Willful violation of the § 524(a)(2) injunction
> warrants the finding of contempt.  *In re Andrus*, 184 B.R. 311, 315-16 (Bankr.
> N.D. Ill. 1995).  To find a creditor in civil contempt the court must find that the
> offending party knowingly violated a definite and specific court order.  *Id.*; *In re*

*Johnson*, 148 B.R. 532, 538 (N.D. Ill. 1992). The burden under § 524(a)(2) is on the Debtors to prove the violation by clear and convincing evidence[15]." *Vertex Distributing, Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982); *In re Keane*, 110 B.R. 477, 483 (S.D. Cal. 1990); *In re Andrus*, 184 B.R. at 315; *In re Ryan*, 100 B.R. 411, 417 (N.D. Ill. 1989). This Court can impose upon a creditor who violates the § 524(a)(2) injunction sanctions for civil contempt, which may consist of remedial and compensatory, but not punitive, sanctions. *Andrus*, 184 B.R. at 315; *In re Torres*, 117 B.R. 379, 382 (N.D. Ill. 1990); *In re Rainbow Magazine, Inc.*, 77 F.3d at 285.

*Gomez* continues:

> Other courts have long held that where a creditor has failed to comply with an order of discharge, civil contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. *In re Whitaker*, 16 B.R. 917, 923 (M.D. Tenn. 1982) (*citing McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 98 L.Ed. 599 (1948)). Civil contempt is therefore an appropriate sanction for a creditor's noncompliance with or violation of the Court's order of discharge. *Whitaker*, 16 B.R. at 923, *Matter of Holland*, 21 B.R. 681, 689 (N.D. Ind. 1982); *see, Matter of Batla*, 12 B.R. 397, 400-401 (Bankr. N.D. Ga.1981).

> Knowledge of the discharge order and knowingly violating it are necessary requirements for contempt. *Holland*, 21 B.R. at 689. A party's negligence or absence of intent to violate the discharge order is not a defense against a motion for contempt. *In re Atkins*, 176 B.R. 998, 1009-1010 (Bankr. D. Minn. 1994) (citations omitted).

17 Mont. B.R. at 172.

The evidence admitted at hearing clearly showed that Northwest Collectors had notice and actual knowledge of the bankruptcy filing, and entry of the discharge order, but knowingly violated it by having Sandefur filed the justice court complaint and obtain a judgment against Stephen.

Sandefur's argument that the Debtor failed to show him anything in writing and failed to

---

[15]The standard of proof may have been reduced to a preponderance of the evidence under the reasoning of *Grogan v. Garner*, 498 U.S. 279, 283-5, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

answer the justice court complaint is no defense to Debtors' Motion for contempt.  The BAP

wrote in *Gurrola*:

> We must emphatically reject Lone Star's position that it was entitled to
> enforce its judgment until such time as the bankruptcy court issued an order
> barring collection activity.
>
> To the contrary, a creditor has a *duty* to obey the discharge injunction,
> which duty is a modern corollary of the venerable rule that "all persons concerned
> in executing [void] judgments . . . are considered in law as trespassers." [*Elliott v.
> Peirsol*, 26 U.S. 328, 340, 7 L.Ed. 154 (1828)] *cited with approval* [*Kalb v.
> Feuerstein*, 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940)].
>
> Moreover, there is no merit in Lone Star's position that the discharged
> debtor was obliged to take the initiative to clarify the discharge issue: "if Mr.
> Gurrola believed his bankruptcy immunized him from enforcement of the
> judgment, then he should" obtain an order from the bankruptcy court to that
> effect.  Such an order already existed in the form of the discharge order, with its
> statutory injunction enforceable by contempt proceedings.

*Gurrola*, 328 B.R. at 174-75.

Sandefur's argument that they should not be subject to sanctions for contempt for

violation of the discharge injunction because Debtor did not respond to the justice court

complaint or show him anything in writing is contrary to the rule in this circuit.  The discharge

injunction existed, and Sandefur's reliance on justice court practice to excuse his admitted lack

of knowledge of bankruptcy law or investigation into Stephen's bankruptcy is no defense at all.

A person who has consulted with an attorney "can be charged with constructive

knowledge of the law's requirements." *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044,

1050 (9th Cir.1987).  Northwest Collectors voluntarily selected Sandefur as its attorney of

record, and it cannot now avoid the consequences of the acts or omissions of its freely-selected

attorney.  *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S.

380, 396-97, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993); *Link v. Wabash Co.*, 370 U.S. 626,

633-34 (1962).  It is simply no excuse for Sandefur to claim that he is not a "bankruptcy

attorney," and did not review Northwest Collectors' phone logs for the Cenex debt.  Under Rule

3.1(a)(1) of the Montana Rules of Professional Conduct "[a] lawyer shall not bring or defend a

proceeding, or assert or controvert an issue therein:  (1) without having first determined through

diligent investigation that there is a bona fide basis in law and fact for the position to be

advocated."  Ex. 15, Northwest Collectors' phone logs for the Cenex account, is replete with

notes about Stephen's bankruptcy and his discharge.  If Sandefur had reviewed the log, Stephen's

Schedule F and bankruptcy law, several red flags should have gone up.  For Sandefur to proceed

to file a motion for default judgment without investigation into the facts and law, and in

particular after explicit warnings from Debtors' attorney who Sandefur acknowledged has

bankruptcy expertise and provided a copy of Stephen's Schedule F listing the Cenex debt, has

resulted in his being held in contempt for violation of the discharge injunction of § 524(a)(2),

because his client had notice and actual knowledge of the bankruptcy case and discharge.

Northwest Collectors had knowledge of Stephen's bankruptcy case and discharge

injunction, but sued and obtained a judgment in justice court in violation of its duty to obey the

discharge injunction.  *Gurrola*, 328 B.R. at 174-75.  Paulson claimed that she and her collectors

are trained in bankruptcy law.  The phone logs for the Cenex debt, Ex. 15, have numerous

references to Stephen's bankruptcy case and discharge, including discussions by the collectors

after the discharge deadline whether it could be excepted from his discharge for fraud.  Yet,

Northwest Collectors commenced the justice court action and obtained a judgement against

Stephen even after Morgan's explicit warnings that they were violating the discharge injunction,

and even after Paulson agreed to dismiss the case.

Paulson's testimony about Northwest Collectors' system's inability to place Stephen's name on the Cenex account because Roy's name was already on it is unpersuasive. Northwest Collectors is a collections agency, in the business of collections, and as such it has the duty to implement systems, training and procedures to avoid violating bankruptcy discharge injunctions in the course of its commercial operations. Northwest Collectors' collectors did their part noting Stephen's bankruptcy and discharge throughout Ex. 15. Northwest Collectors failed to comply with the discharge injunction by suing Stephen and obtaining a judgment, and as a result it is now liable for sanctions for violating the discharge injunction.

The BAP in *Gurrola* explained the burden of proof in cases involving automatic stay violations and discharge injunction violations:

> Lone Star's position is remarkably similar to that of the automatic stay violator we encountered in *Morris v. Peralta*, 317 B.R. 381, 389 (9th Cir. BAP 2004), who thought that he could safely quibble with a debtor about the automatic stay. We held that debtors do not bear the burden of proving to creditors the existence of the automatic stay before stay-violation liability can be imposed. *Id.* at 389. The same basic analysis applies to the discharge and the discharge injunction.
>
> As with the § 362 automatic stay, the § 524(a) discharge and the discharge injunction are effective against the world to the full extent of their statutory terms, regardless of notice. Although the discharge and discharge injunction differ from the automatic stay in the sense that the protection is limited to the personal liability of the debtor and does not, for example, affect valid prepetition liens, these are distinctions without a difference with respect to the effect on creditors. [citing cases]

*Gurrola*, 328 B.R. at 175. Under the preceding language, Debtors did not have the burden of proving to Sandefur and Northwest Collectors the existence of the discharge injunction. Even so Morgan informed them explicitly of their violation, and provided a copy of Schedule F listing the

25

Cenex debt, but they proceeded to obtain a default judgment notwithstanding his warning.

In their objection to Debtors' Motion, Northwest Collectors and Sandefur contend that they had a valid post-petition agreement from Stephen to pay, which is enforceable under state law, and thus were not in violation of the discharge injunction when they sued Stephen in justice court. This argument, which they appeared to abandon in their objection to Morgan's fees, is without merit.

Northwest Collectors was listed in Schedule F for the Cenex debt and received notice of the case, and received a copy of the discharge order. The evidence is uncontroverted that the entire Cenex debt was incurred prior to 2005, so it was discharged after notice. The evidence is also uncontroverted that no reaffirmation agreement was submitted or approved in satisfaction of 11 U.S.C. § 524(c), which by its terms is the sole means to obtain an enforceable agreement, whether or not a discharge is waived, based on a dischargeable debt.

Section 524(f) provides: "Nothing contained in subsection (c) or (d) of this section prevents a debtor from voluntarily repaying any debt." That section, however, by its plain language precludes the use of the justice court system to collect a debt. Stephen's voluntary offer to repay the debt after the discharge simply could not be the basis for Northwest Collectors' lawsuit in justice court, pursued by Sandefur, without violating the discharge injunction. The BAP explains:

> [T]he chapter 7 discharge is absolute and, in light of the antiwaiver provisions of § 524(a), does not admit of an equitable exception that would permit it to be waived by postdischarge conduct. *Lone Star Sec. & Video, Inc. v. Gurrola (In re Gurrola)*, 328 B.R. 158, 172 (9th Cir. BAP 2005). In the case of § 524(a)(3), the anti-waiver language is "whether or not discharge of the debt based on such community claim is waived." 11 U.S.C. § 524(a)(3).

For the reasons we explained in *Gurrola*, Congress was emphatic that the anti-waiver language in § 524(a) was "intended to prevent waiver of discharge of a particular debt from defeating the purposes of this section." *Gurrola*, 328 B.R. at 170 (quoting H.R. Rep. No. 95-595, at 366 (1977); S.Rep. No. 95-989, at 80 (1978).

*In re Kimmel*, 378 B.R. 630, 638 (9th Cir. BAP 2007).

The BAP concluded in *Gurrola*:

There is no equitable exception to the provisions of § 524(a) that void any judgment at any time obtained with respect to the personal liability of the debtor for a specific discharged debt, which voidness cannot be waived, and that similarly enjoining all entities from attempting to collect such a discharged debt. Any postpetition misconduct by the debtor must be remedied by some means tailored to that misconduct and cannot include reviving the discharged debt.

*Gurrola*, 328 B.R. at 176.

As a result, Northwest Collectors' and Sandefur's acts and the justice court default judgment entered against Stephen were void ab initio because they were in violation of the discharge injunction, the same as violations of the automatic stay. *Gurrola*, 328 B.R. at 175 (citing cases). Although void, Debtors suffered damages as a result of Northwest Collectors' and Sandefur's violations of the discharge injunction, including the appearance of the void judgment on Stephen's credit report which caused denial of a loan, and Debtors are entitled to recover damages and attorney fees. *Walls*, 276 F.3d at 507.

Stephen's testimony that he missed work for purposes of the hearing establish his lost wages in the amount of $326.00, and his mileage of 254 total miles which the court awards at the rate of $.485 per mile for a mileage award of $123.19. Morgan submitted his affidavit of fees and costs, to which Northwest Collectors and Sandefur filed objections which they submitted on briefs stipulating there were no disputed facts.

27

### C.  Attorney Fees.

"[C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction." *Walls*, 276 F.3d at 507; *Crocker*, 20 Mont. B.R. at 387-88.  Morgan's affidavit of fees and costs (Docket No. 24) itemized $5,510.00 in fees and costs of $288.46 for reopening the case, litigating Debtors' Motion, and copies.  Northwest Collectors and Sandefur objected to all fees in excess of Morgan's $1,010.00 demand in Ex. 13 for fees up to October 2, 2007, which they describe as "unquestionably appropriate" because Morgan demanded damages in Ex. 13 for violations under the FDCPA and FCRA, citing *Walls*, 276 F.3d at 507.  They argue that Morgan demanded things he could not get in bankruptcy court, and that "[h]ad the demand on October 2, 2007, been for attorneys fees incurred to that date and the respondents refused, the expenditure of time preparing a motion and attending a hearing may have been justified, but that situation did not occur."

The Debtors responded that *Walls* does not prevent debtors from pleading facts to state either a discharge injunction violation or claims under FDCPA and FCRA, and their fees as victims should not be capped for having a contested hearing.  Debtors point out that Sandefur and Northwest Collectors simply rejected Morgan's settlement offer and demand for money, and did not counteroffer or negotiate but instead dug in their heels and forced Debtors to proceed with a contested hearing.  Morgan asks for $1,000.00 in additional fees for five hours to research Northwest Collectors' and Sandefur's arguments and prepare Debtors' response brief[16].

---

[16]Morgan did not include contemporaneous billing records itemizing the additional 5 hours of time for which he requests an additional $1,000.00 in fees, as required by Mont. LBR 2016-1(a).  The request for an additional 5 hours constitutes lumping.

28

The Court agrees that the Ninth Circuit controlling authority in *Walls* precludes an award for fees under FDCPA and FCRA by this Court:

> While the FDCPA's purpose is to avoid bankruptcy, if bankruptcy nevertheless occurs, the debtor's protection and remedy remain under the Bankruptcy Code. *See Kokoszka v. Belford*, 417 U.S. 642, 651, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).
>
> Because Walls's remedy for violation of § 524 no matter how cast lies in the Bankruptcy Code, her simultaneous FDCPA claim is precluded.

*Walls*, 276 F.3d at 510-11.

As far as this Court is concerned the Debtors have not properly requested damages or fees based upon FDCPA and FCRA in the instant Motion for Sanctions. Such claims are not part of the Bankruptcy Code, and so Morgan's fees for research and services related to FDCPA and FCRA are not proper under the instant § 524(a) Motion, and such fees will not be awarded.[17]

Morgan's billing statements reflect entries which include fees regarding FDCPA and FCRA violations on 8/17/2007 ($200) for discussing several matters including FDCPA and FCRA violations; 8/21/2007 ($200) for researching FDCPA and FCRA violations; and 10/24/2007 ($550) for researching discharge injunction and interplay with FDCPA and FCRA violations. The Court disallows the $200 charge on 8/21/2007 since it is solely related to FDCPA and FCRA violations, which the Court does not consider properly submitted in this Court, and disallows two-thirds ($500) of the $750.00 for the other two entries which lumped together fees related to FDCPA and FCRA on 8/17/2007 and 10/24/2007. By deducting $700.00

---

[17]However, nothing in this Memorandum of Decision should be viewed as having any preclusive effect against Debtors from seeking relief under FDCPA and/or FCRA, or defenses thereto, in an appropriate, other forum.

from Morgan's affidavit of fees, $4,810.00 is left in fees.  Morgan's request for an additional $1,000 for 5 additional hours for his response brief is unsupported by contemporaneous billing records, and constitutes lumping.  Pursuant to Mont. LBR 2016-1(a) the additional fees are limited to one hour and $200.00; thus Morgan's total allowable fees are $5,010.00.  Under the holding of *Walls* and *Crocker* quoted above, Debtors are entitled to attorney fees in the amount of $5,010.00 and costs in the amount of $288.46, in addition to their actual damages, for Northwest Collectors and Sandefur's violations of the discharge injunction.  *Walls*, 276 F.3d at 507; *Crocker*, 20 Mont. B.R. at 387-88.

Northwest Collectors and Sandefur changed their legal theory from the time they filed their objection to Debtors' Motion on December 10, 2007, Docket No. 16, to their briefs in response to Morgan's affidavit of fees (Docket Nos. 26 and 28).  In the latter they admit that Morgan's fees for asserting Debtors' rights under § 524(a) are "unquestionably appropriate" and that preparing and attending a hearing on discharge injunctions may have been justified, but that Morgan overreached in demanding fees under FDCPA and FCRA.  However, in their objection (Docket No. 16) filed on December 10, 2007, Northwest Collectors and Sandefur assert that their agreement with Stephen to pay on the discharged Cenex debt "is a valid, enforceable post-petition obligation of Stephen Jones."  Northwest Collectors and Sandefur refused Morgan's settlement offer and demand for payment, objected to the Motion and set the matter for hearing on January 10, 2008.  Because they objected, Morgan was forced to prepare for trial and litigate Debtors' Motion at a contested hearing.

Northwest Collectors and Sandefur did not admit to violating the discharge injunction and proceeded to trial on the violation and on the amount of damages.  If they had not contested

30

the violation and the damages, they could have considerably reduced the amount of time Morgan would have had to prepare in order to litigate the violation, damages and reasonable attorney fees and costs.  If they had attempted to negotiate instead of refusing Morgan's demand outright, they may have been able to reach a resolution with damages, fees and costs significantly less than the damages, fees and costs shown by the record.  They, however, did not accept Morgan's demand. They did not attempt to negotiate.  They did not concede blatant violations of the discharge injunction and contest damages and attorney fees.  Instead, because they chose to object and assert a theory based on "a valid, enforceable post-petition obligation" to repay a debt which had been listed on Debtors' Schedule F and discharged, Northwest Collectors and Sandefur forced the Debtors to establish a factual record, not only of their damages and costs, but also sufficient to establish that Northwest Collectors and Sandefur violated the discharge injunction under § 524(a)(2).  The contested hearing involved the testimony of several witnesses and consideration of twenty-one exhibits.

Their violations of the discharge injunction were clear, and were supported by Northwest Collectors' own telephone logs.  The Court will not second guess Debtors' attorney's tactics, or reduce his attorney fees beyond the reductions already made, when Northwest Collectors and Sandefur left Morgan no alternative but to pursue on behalf of Debtors the Motion and prepare for and proceed to trial on the merits of their Motion.  The Court has disallowed Morgan's fees related to FDCPA and FCRA, without prejudice, and reduced his post-hearing fees for lumping. The Court allows and awards the remainder of attorney's fees and costs in the amount of $5,010.00 and 288.46, respectively, in addition to Stephen's lost wages and mileage for attending the hearing against Northwest Collectors and Sandefur, for which each shall be jointly and

severally liable, for violation of the discharge injunction imposed by § 524(a)(2).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this Chapter 7 case under 28 U.S.C. § 1334(a).

2. Debtors' Motion for Sanctions for Contempt of Court, for violation of the discharge injunction of 11 U.S.C. § 524(a)(2), is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Debtors satisfied their burden of proof to show that Northwest Collectors, Inc., and Patrick G. Sandefur knowingly violated the bankruptcy discharge injunction of 11 U.S.C. § 524(a) when they filed a complaint in justice court and obtained a judgment against Stephen Roy Jones to collect a prepetition discharged debt, after receiving notice of the bankruptcy case and discharge, and having actual knowledge from Debtors' attorney that the Cenex debt had been included in Debtors' Schedule F.  Northwest Collectors and Sandefur are in contempt.

4. Debtors suffered damages resulting from Northwest Collectors' and Sandefur's violations of the discharge injunction in the form of lost wages for Stephen in the amount of $326.00, and they are entitled to compensation for mileage in the amount of $123.19.

5. Debtors are entitled to an award of attorney fees in the amount of $5,010.00 and costs in the amount of $288.46, which were incurred in litigating their Motion for Sanctions for Contempt under § 524(a)(2).

6. Debtors are not entitled to attorney fees and costs from Northwest Collectors and Sandefur in this contested matter under § 524(a)(2) for alleged violations of FDCPA and FCRA. However, nothing in this Memorandum of Decision shall be construed to have any preclusive effect on claims brought for alleged violations of FDCPA and FCRA by Northwest Collectors, or defenses thereto, in another forum.

**IT IS ORDERED** a separate order and judgment shall be entered in conformity with the above overruling the objections filed by Northwest Collectors and Patrick Sandefur (Docket Nos. 16, 26 and 28), granting Debtors' Motion for Sanctions for Contempt of Court (Docket No. 15) against Northwest Collectors, Inc.,  and its attorney Patrick G. Sandefur/the Law Office of Patrick G. Sandefur, but denying Debtors' Motion with respect to Cenex; and a separate Judgment in favor of Debtors will be entered against Northwest Collectors, Inc., and its attorney Patrick G. Sandefur/the Law Office of Patrick G. Sandefur, who are jointly and severally liable, for damages in the form of lost wages in the amount of $326.00, plus $123.19 in mileage, plus attorney fees in the amount of $5,010.00 and costs in the amount of $288.46, for a total award in the amount of $5,747.65 against Northwest Collectors and Sandefur for violations of the discharge injunction of 11 U.S.C. § 524(a)(2).

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana